# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES LIMON JACOBO,<br>                        Plaintiff,<br>vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security,[1]<br>                        Defendant. | Case No.: 3:24-cv-01691-BTM<br><br>**ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[ECF NO. 17]** |

Pending before the Court is the parties' Joint Motion for Judicial Review. (ECF No. 17 ("Joint Motion").) For the reasons discussed below, the Court resolves the Joint Motion in Plaintiff's favor, **VACATES** the Commissioner's decision, and **REMANDS** for further administrative proceedings.

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. Although Plaintiff originally brought this action against former Commissioner Martin O'Malley, this case may properly proceed against Frank Bisignano pursuant to 42 U.S.C. § 405(g).

# I. BACKGROUND & PROCEDURAL HISTORY

On March 8, 2022, Plaintiff filed an application with the Social Security Administration for Social Security Disability Insurance ("SSDI") benefits, alleging a disability onset date of June 3, 2021. (Administrative Record ("AR"), at 191–92.) Plaintiff's claim was initially denied on August 9, 2022. (*Id.* at 60–72.) Plaintiff requested reconsideration of the initial determination on September 3, 2022 (*id.* at 102), which was denied on October 26, 2022. (*Id.* at 103–07.) On November 5, 2022, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 111–12.) An ALJ held a hearing on June 14, 2023, at which Plaintiff and a vocational expert ("VE") testified. (*Id.* at 34–59.)

The ALJ issued an unfavorable decision on October 19, 2023. (*Id.* at 18–33 (the "ALJ's Decision" or the "Decision").) The ALJ conducted the five-step sequential analysis set forth in 20 C.F.R. § 404.1520.[2]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 3, 2021, his alleged disability onset date,

---

[2] "To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing 20 C.F.R. § 404.1520).

> At the first step, a claimant doing substantial gainful work activity is not disabled. At the second step, a claimant is not disabled unless she has a medically determinable physical or mental impairment or combination of impairments that is severe and either lasts at least a year or can be expected to result in death. . . . At the third step, a claimant is disabled if the severity of her impairments meets or equals one of various impairments listed by the Commissioner of Social Security. At the fourth step, a claimant is not disabled if her residual functional capacity allows her to perform her past relevant work. At the fifth step, a claimant is disabled if, given her residual functional capacity, age, education, and work experience, she cannot make an adjustment to other work that exists in significant numbers in the national economy.

*Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (internal citations and quotations omitted). "This process ends when the ALJ can make a finding that the claimant is or is not disabled." *Id.*

through December 31, 2021, his last insured date. (*Id.* at 23.) At step two, the ALJ found that Plaintiff had two severe impairments: 1) a below knee amputation of his right lower extremity, and 2) diabetes mellitus type 2 with peripheral neuropathy. (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 24.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "a range of sedentary to light exertional work as defined in 20 CFR 404.1567(a)(b) except only stand and/walk [sic] 2 hours out of an 8-hour day, occasional postural abilities, other than never climb ladders, ropes, scaffolds, and no concentrated exposure to unprotected heights or dangerous machinery." (*Id.* at 24.)

At step four, the ALJ found that Plaintiff was unable to perform past relevant work as an industrial truck operator, day laborer, tool crib attendant, tractor operator, and day worker. (*Id.* at 27.)

At step five, based on the testimony of the VE, and considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff would be able to perform the following jobs existing in significant numbers in the national economy: 1) Assembly, Production, 2) Mail Clerk, and 3) Fundraiser II. (*Id.* at 28.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act, and denied his claim. (*Id.* at 29.)

The Appeals Council denied review of the ALJ's Decision on July 25, 2024. (*Id.* at 1.) Plaintiff filed the instant action seeking review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g) on September 22, 2024. (ECF No. 1.) The parties filed the Joint Motion on June 28, 2025. (ECF No. 17.) Plaintiff raises three arguments in the Joint Motion. *First*, Plaintiff argues the ALJ's RFC finding is more restrictive than the limitations included in the ALJ's hypothetical question posed to the VE, and that the ALJ did not include a function by function assessment of Plaintiff's capabilities. *Second*, Plaintiff argues the ALJ's Decision does not properly account for Plaintiff's use of a

wheelchair, walker, cane, and lower extremity prosthesis. *Third*, Plaintiff argues the ALJ failed to identify and resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Defendant challenges each of these contentions.

## II. LEGAL STANDARD

"The Commissioner's denial of disability benefits may be set aside only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record. If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020). "[T]he threshold for . . . evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Aheard v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "[T]he court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## III. DISCUSSION

### A. The ALJ's Residual Functional Capacity Finding

At the hearing, the ALJ posed the following hypothetical question to the VE:

> If we assume someone similar to Mr. Limon in age, education, and work experience that's capable of ***light work*** but can only stand and walk for two hours out of an eight-hour day. Can only occasionally perform postural activities but can never climb ladders, ropes, and scaffolds and could have no concentrated exposure to unprotected heights or hazardous machines. Could that person perform any of Mr. Limon's past work?

(AR, at 51–52 (emphasis added).) The VE responded that this hypothetical person could not perform any of Plaintiff's past work. (*Id.* at 52.) The ALJ then asked "[w]ould there

be other work, however?" (*Id.*)  The VE clarified: "I just want to double-check what's on the postural limitations.  Are we talking handling, fingering, and feeling at occasional level?" (*Id.*)   The ALJ responded: "No, I didn't say anything about handling and fingering." (*Id.*)  The VE then testified that this hypothetical person could perform the occupations of 1) Assembly, Production, 2) Mail Clerk, and 3) Fundraiser II. (*Id.*)  In his Decision, the ALJ found that Plaintiff had the RFC to perform "a range of *sedentary to light* exertional work as defined in 20 C.F.R. 404.1567(a)(b) except only stand and/walk 2 hours out of an 8-hour day, occasional postural abilities, other than never climb ladders, ropes, scaffolds, and no concentrated exposure to unprotected heights or dangerous machinery" (*id.* at 24 (emphasis added)), and found Plaintiff could perform the jobs of "Assembler, Production, . . . Mail clerk, . . . and Fundraiser II." (*Id.* at 28.)

Plaintiff argues the ALJ erred "because the VE's testimony was based on an individual who is less restricted than [Plaintiff] according to the ALJ's own findings." (Joint Motion at 6.)  In response, Defendant argues that the ALJ did not err because "all limitations found in the [RFC] finding were included in the hypothetical presented to the VE." (Joint Motion, at 8.)

"An ALJ may rely on a vocational expert's testimony that is based on a hypothetical that 'contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record.'"  *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)).  However, if the hypothetical "does not include some of the claimant's limitations, the vocational expert's testimony 'has no evidentiary value.'"  *Id.* (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008)).

The Court agrees with Defendant that the hypothetical the ALJ posed to the VE was not improperly less restrictive than the ALJ's RFC finding.  In his Decision, the ALJ found that Plaintiff had the RFC to perform *not only* sedentary work *but also* light work, "within the context of the further limitations provided in the RFC finding." (Joint Motion, at 8.) All of those further limitations were included in the hypothetical the ALJ posed to the VE.

Although the ALJ's hypothetical to the VE did not mention sedentary work, any individual who can perform light work can also perform sedentary work. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

Plaintiff also argues that the ALJ erred because the ALJ's RFC finding fails to provide a "function by function assessment specifically addressing 'the maximum amount of each work-related activity' the individual can perform in terms of 'sitting, standing, walking, lifting, carrying, pushing, and pulling,'" and instead improperly "express[es] the claimant's RFC as a mere exertional category." (Joint Motion, at 7 (quoting SSR 96-8p, 1996 WL 374184, at *5, 7 (July 2, 1996)).)  Social Security Ruling 96-8p[3] provides that an ALJ's "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

The Court agrees with Defendant that "the ALJ did not merely state that Plaintiff's RFC was for 'sedentary' or light'" work. (Joint Motion, at 9.)  Instead, the ALJ "included a detailed function by function assessment of Plaintiff's RFC" by limiting Plaintiff to "standing and walking for no more than 2 hours, no more than occasional postural

---

[3] Social Security Rulings ("SSRs") "represent precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration has] adopted." 20 C.F.R. § 402.160(b)(1).  "SSRs 'do not carry the force of law, but they are binding on ALJs nonetheless.'" *Glanden v. Kijakazi*, 86 F.4th 838, 843 n.4 (9th Cir. 2023) (quoting *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017)).  "SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (quoting *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006)).

1  activities, and no climbing of ladders, ropes or scaffolds." (*Id.* at 9–10.) "[I]n accordance
2  with Social Security Ruling 96-8p, the ALJ defined [Plaintiff's] RFC as '[light]'" and
3  cited to 20 C.F.R. §§ 404.1567(a)–(b), "which includes well-defined function-by-function
4  parameters." *Buckner-Larkin v. Astrue*, 450 F. App'x 626, 627–28 (9th Cir. 2011)
5  (finding that ALJ did not err when "the ALJ defined [claimant's] RFC as 'sedentary,'" the
6  "RFC also included a sit-stand option," and the ALJ "accounted for pain, noting that
7  [claimant']s concentration, persistence, and pace would be limited because of pain and
8  pain medication"). This was not error. *See also Rodriguez v. Berryhill*, 709 F. App'x 859,
9  861 (9th Cir. 2017) (finding that ALJ did not err when the "ALJ determined that Plaintiff
10 cannot climb ladders, ropes, and scaffolds, but otherwise defined Plaintiff's RFC as able
11 to do 'light work,' and cited the regulations defining 'light work'").

**B. Plaintiff's Use of a Wheelchair, Walker, Cane, and Lower Extremity Prosthesis**

Plaintiff also argues that the ALJ erred in finding Plaintiff was not disabled because Plaintiff was dependent on a wheelchair or walker for a continuous 12-month period. (Joint Motion, at 12–13.) Plaintiff notes that the Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." (*Id.* at 12–13 (quoting 42 U.S.C. § 423(d)(1)(A)).) Plaintiff argues that because agency policy provides that "a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly" SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996), an individual who is dependent on a wheelchair or walker is entitled to an award of benefits. (Joint Motion, at 13.)

Plaintiff argues that "the uncontradicted evidence of record indicates that Plaintiff was in a wheelchair or in a walker from the time of his June 5, 2021 leg amputation until at least some time near the end of 2022." (*Id.* at 13.) However, the parts of the record that Plaintiff has cited do ***not*** demonstrate that Plaintiff was continuously in a wheelchair until

the end of 2022, or even until June 5, 2022.  Plaintiff's first citation is to a page of the ALJ's Decision that reads that "[Plaintiff] testified that he used a wheelchair from the alleged onset date through October 2022."  (AR, at 26.)  The next citation is to Plaintiff's attorney's statement at the hearing, which reads:  "In my quick read of the record is that for—it appears that for a period of time, possibly I think, he'll testify about a year, he was wheelchair bound into sometime late 2022."  (AR, at 39.)  Plaintiff's next citation is to Plaintiff's actual testimony at the hearing.  (AR, at 45–46.)  The ALJ asked Plaintiff:  "So, you had the amputation back in June of 2021.  Did you have to use either—where you in a—were you wheelchair bound at any point?" (*Id.* at 45.)  Plaintiff responded:

> Yeah, I was.  As soon as they release me [sic] from the hospital ***I was in a wheelchair for a couple of months*** until they—once everything was completed cured [sic], then I went into a prosthetic and that took a couple of months also to get the prosthetic leg.  And once they got the prosthetic leg, I was in not a wheelchair but in like a—I helped [sic] me walk, ***like a walker. And it took me a couple of months also***.  Teach me how to use my leg and to be able to get to it [sic].

(*Id.* at 45 (emphases added).)  The Court does not interpret this testimony as Plaintiff affirmatively stating that he used a wheelchair or walker for a continuous 12-month period starting in June 2021.  Testifying that one used wheelchair for a "couple of months" and then used a walker for a "couple of months" does not at all mean that one was reliant on a wheelchair or walker for a full year.

Plaintiff's next citations are to submissions from Plaintiff's attorney stating that Plaintiff "will testify that following surgery, he used a wheelchair until approximately October 2022," and that Plaintiff was wheelchair-bound from the alleged onset date until October 2022.  (AR, at 278, 284.)  Finally, Plaintiff has cited a medical treatment note dated June 22, 2021, which notes that Plaintiff was in a wheelchair on that date.  (AR, at 327, 335–36.)

The only "evidence" that Plaintiff has cited to suggesting that Plaintiff was in a wheelchair or used a walker for a continuous 12-month period is either attorney argument or Plaintiff's unclear testimony at the hearing.  Defendant highlighted this in its portion of

the Joint Motion.  (*See* Joint Motion, at 15–16.)  Yet Plaintiff still failed in his Reply to point to any additional evidence that demonstrates that he used a wheelchair or walker at any time for a continuous 12-month period.  (*See generally id.* at 17–19.)  Nor has the Court identified any such evidence in its own review of the Administrative Record.  The Court therefore cannot find that Plaintiff was reliant on a wheelchair or walker for a continuous 12-month period, and so cannot find that the ALJ erred in finding that Plaintiff was not disabled for this reason.

Plaintiff also notes that the "ALJ's RFC as expressed in the hypothetical question never accounted for Plaintiff's use of a cane and a lower extremity prosthesis," and argues this is error because "a cane must be included in any RFC finding and hypothetical question, [and] so too must the required use of a prosthesis." (*Id.* at 14, 18–19.)  The Court disagrees.  Plaintiff provides no support for his contention that an RFC finding "must" explicitly reference a claimant's use of a cane and/or prosthesis.  And as Defendant notes, "[t]he use of a prosthesis is accommodated in the RFC finding by the limitation to no climbing or ladders, ropes or scaffolds and the restriction from working around heights or with dangerous machinery." (*Id.* at 16.)  The ALJ's RFC finding also limits Plaintiff to standing or walking only 2 hours out of an 8-hour day.  (AR, at 24.)  Plaintiff does not appear to argue that the evidence in the record demonstrates that his use of a prosthesis and/or cane actually ***limits his abilities*** more than as described in the ALJ's RFC finding; rather, he appears to argue that the problem is the absence of the words "cane" or "prosthesis" in the ALJ's RFC finding.  The Court cannot find that this is error, let alone reversible error.

### C. Conflict Between the VE's Testimony and the Contents of the DOT

Finally, Plaintiff argues that the ALJ erred by failing to recognize and analyze a conflict between the VE's testimony and the contents of the DOT.  Plaintiff cites to SSR 00-4p as putting an affirmative requirement on an ALJ to "identify, address, and explain the resolution of any apparent conflicts between the testimony of the VE and the contents of the DOT," and that "the ALJ must obtain a reasonable explanation from the

VE as to the apparent conflict and then explain how the ALJ resolved that apparent conflict."[4]  (Joint Motion, at 19 (citing SSR 00-4p, 2000 WL 1898704, at *1–4 (Dec. 4, 2000)).)  The VE testified that Plaintiff had the RFC to perform the occupations of 1) Production, Assembly, 2) Mail Clerk, and 3) Fundraiser II, all of which are classified as "light" occupations in the DOT.  (AR, at 52.)  The ALJ adopted this testimony in his Decision.  (AR, at 28.)  "[T]the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).  Therefore, Plaintiff argues, because the DOT classifies these three occupations "light," and the VE testified that Plaintiff could perform these occupations even though the hypothetical the ALJ posed to the VE included the limitation of no more than two hours of standing/walking in a workday, there is an unresolved conflict between the VE's testimony and the contents of the DOT.  (Joint Motion, at 20.)

In response, Defendant appears to concede that the ALJ failed to resolve conflicts between the DOT and the VE's testimony with regard to the occupations of Production, Assembly and Mail Clerk.  (*See generally* Joint Motion, at 21–22.)  However, Defendant argues that the VE adequately explained that "while the fundraiser II occupation was categorized as light by the DOT, other vocational sources indicated that the job could be performed with six hours of sitting per day (leaving only 2 hours for standing or walking)."  (Joint Motion, at 21.)

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency."  *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir.

---

[4] The Social Security Administration recently rescinded and replaced SSR 00-4p with SSR 24-3p; however, the agency "expect[s] that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."  SSR 24-3p, 2024 WL 5256890, at *2 n.1 (Dec. 6, 2024).

2015). If the ALJ fails to do so, there may be "a gap in the record that precludes [the court] from determining whether the ALJ's decision is supported by substantial evidence." *Id.*

The Court agrees with Plaintiff that the ALJ erred by failing to identify and resolve the conflict between the VE's testimony and the contents of the DOT with respect to the standing/walking requirements of the Assembler and Mail Clerk occupations. There is no explanation in either the VE's testimony or the ALJ's Decision as to how an individual who can only walk/stand for two hours out of an eight-hour workday could perform either of these occupations. Nor did the VE or the ALJ acknowledge that these occupations, as described in the DOT, generally require standing/walking for more than two hours of an eight-hour workday. The ALJ's failure to identify and resolve this conflict therefore "precludes [the Court] from determining whether the ALJ's decision" that Plaintiff can perform the jobs of Assembler and Mail Clerk "is supported by substantial evidence." *Zavalin*, 778 F.3d at 846.

The Court also agrees with Plaintiff that the ALJ's Decision does not explicitly identify the conflict between the VE's testimony and the DOT regarding the Fundraiser II occupation, and therefore that the ALJ erred in not identifying this conflict. However, this error was harmless because there is evidence in the record to support a finding that an individual can perform this position and stand/walk no more than two hours in a workday. At the hearing, Plaintiff's attorney asked the VE the following about the Fundraiser II position: "I noticed it's a light job and the Judge had the restriction of standing and walking to two hours. So, that job . . . is still acceptable?" (AR, at 55–56.) The VE responded: "[L]et me look at—I want to look at my other source. All right. They can sit up to six hours in this job." (AR, at 56.) Plaintiff's attorney responded: "So, the DOT the way it describes it, it describes it as a standing [sic] but you're saying that's not the way it's performed?" (*Id.*) The VE responded: "The Occupational Requirement Survey breaks it down a little bit different. For example give, me—50 percentile. 50 percentile of the people who perform these jobs sit up to six hours." (*Id.*) The VE's testimony

therefore clearly acknowledges and resolves the conflict between the contents of the DOT and the VE's testimony that a person with Plaintiff's RFC could perform this occupation. The ALJ's failure to explicitly acknowledge this conflict and its resolution in his Decision was therefore harmless.[5]

Defendant argues that the ALJ's Decision should be affirmed because the VE "testified that there are 39,000 fundraiser II jobs nationally" and therefore "this occupation alone is substantial evidence supporting the ALJ's conclusion that Plaintiff could perform work that exists in significant numbers in the national economy." (Joint Motion, at 22 (citing *Gutierrez v. Colvin*, 740 F.3d 519, 527–29 (9th Cir. 2014)).) However, the VE's testimony was more specifically that "50 percentile [sic] of the people who perform [fundraiser II] jobs sit up to six hours." (AR, at 56.) This suggests that there are only 19,500 fundraiser II jobs existing in the national economy that can be performed by an individual who can only stand/walk for two hours out of an eight-hour workday. Although the Ninth Circuit has held that 25,000 nationally-available jobs constitutes a significant number in the national economy, it stated that this number was "a close call." *Gutierrez*, 740 F.3d at 527. And the Ninth Circuit has more recently suggested that 18,500 nationally-available jobs is not large enough to constitute a "significant" number of jobs in the national economy. *See Little v. Berryhill*, 690 F. App'x 915, 917 (9th Cir. 2017). The Court therefore cannot confidently find that the VE's testimony regarding the Fundraiser II position adequately supports the ALJ's nondisability determination. As a result, the Court concludes that the ALJ's errors regarding the conflicts between the contents of the DOT and the VE's testimony regarding the Assembler and Mail Clerk positions were not harmless.

---

[5] "[E]ven when the ALJ commits legal error, [the reviewing court should] uphold the decision where that error is harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). An error is harmless when "it is inconsequential to the ultimate nondisability determination," or when, despite the legal error, "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.*

## IV. CONCLUSION

For the foregoing reasons, the Court resolves the Joint Motion in Plaintiff's favor. The denial of Plaintiff's SSDI application is set aside, and the matter is **REMANDED** to the Commissioner for further proceedings. On remand, the evidentiary record shall also be reopened so that Plaintiff may submit additional evidence that demonstrates that he was dependent on a walker or a wheelchair for a continuous 12-month period.

**IT IS SO ORDERED.**

Dated: August 11, 2025

Honorable Barry Ted Moskowitz
United States District Judge